# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| AHMED AL-OBAIDI, <br>         Plaintiff, <br> <br> v. <br> <br> ANTONY J. BLINKEN, Secretary of the United States Department of State, *et al.*, <br>         Defendants. | ) <br> ) <br> ) <br> )   Case No. 3: 24-cv-00419 <br> )   Chief Judge Campbell/Frensley <br> ) <br> ) <br> ) <br> ) |

## REPORT AND RECOMMENDATION

This pro se immigration matter is before the court on defendants' motion to dismiss for failure to state a claim. Docket No. 7. Plaintiff opposes the motion, and the motion is ready for ruling. After reviewing the record and briefs, the undersigned recommends that defendants' motion to dismiss be granted and the complaint be dismissed.

### I.    BACKGROUND

Plaintiff Ahmed Al-Obaidi alleges the following in his pro se complaint. Docket No. 1, pp. 1-11. On August 7, 2022, Plaintiff filed a Form I-130, Petition for Alien Relative ("visa petition") with the U.S. Citizenship and Immigration Services ("USCIS") on behalf of his wife, Lamees Jasim Mohammed Al-Obaidy. *Id.* p. 1. On August 3, 2022, USCIS approved Plaintiff's I-130 spouse visa petition and forwarded it to the Department's National Visa Center ("NVC") for processing. Docket No. 1-2, p. 2. The NVC completed its processing of the case and sent it to the U.S. Embassy in Amman, Jordan, for an interview. *Id.* p. 5. On April 26, 2023, a consular officer at the U.S. Embassy in Amman conducted Ms. Al-Obaidy's visa interview. *Id.* On April 26, 2023, the consular officer determined that security vetting was needed and refused Ms. Al-Obaidy's immigrant visa application. *Id.*, p. 10. Security screening is ongoing. *Id.*

Plaintiff alleges that defendants have unlawfully withheld or unreasonably delayed a mandatory, nondiscretionary duty to adjudicate his spouse's visa application. Docket No. 1, p. 2. Plaintiff alleges he has endured substantial emotional and logistical hardships, including separation, residing on separate continents, and "profound uncertainty," all stemming from the unreasonable and unlawfully delayed issuance of his spouse's immigrant visa. *Id.*, p. 3. For relief, he seeks a writ of mandamus compelling defendants to complete adjudication of his spouse's immigrant visa. *Id.*, pp. 7-8. He also asserts a claim under the Administrative Procedure Act ("APA") for defendants' extensive delay in completing the adjudication of his spouse's visa. *Id.*, pp. 6-7.

Plaintiff attached the following exhibits to his complaint[1]: Form I-797C, I-130 Approval Notice; Immigrant Visa Interview Appointment Email; Refusal Under Section 221(g) Letter, U.S. Embassy Amman; U.S. Department of State CEAC Visa Status Check Record; and Record of Inquiries into Administrative Processing of Immigrant Visa. *Id.*, p. 11. Plaintiff names as defendants Antony J. Blinken, U.S. Secretary of State, and others.

Defendants now move to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket No. 8. Defendants argue a consular officer has, in fact, refused Ms. Al-Obaidy's visa application and discharged the duty to either issue a visa or refuse to issue a visa. They argue judicial review of the complaint is barred under the doctrine of consular nonreviewability, and even if the Court were to consider the claims, Plaintiff cannot allege facts that support a claim that the consular officer failed to take an action or demonstrate

---

[1] Ordinarily, only the facts alleged in the complaint are considered in ruling on a 12(b)(6) motion, but materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

that the delay in this instance is unreasonable. Docket No. 8, p. 1. In support, defendants submitted the declaration of Rachel Ann Paterson, Attorney-Advisor for the U.S. Department of State in the Office of the Assistant Legal Adviser for Consular Affairs, dated June 27, 2024. In it, Paterson attests that Ms. Al-Obaidy's case was refused under INA § 221(g) and 8 U.S.C. §1201 (g) and determined that additional security screening was required. Additionally, Peterson attests that "As of the date of this Declaration, security screening is ongoing..." Docket No. 9, pp. 1-2.

Plaintiff opposes the motion, arguing his case is "live" and that consular nonreviewability does not apply where a plaintiff merely seeks to compel adjudication of a visa application. Docket No. 10, pp. 4, 7. He contends his spouse's immigrant visa application has been stalled in administrative processing since April 26, 2023, and that despite ongoing security checks, the Embassy in Amman has communicated that her case is being refused under section 221(g) of the Immigration and Nationality Act, citing mandatory administrative processing requirements which sometimes cause extended delays. *Id.*, p. 8. He argues Embassy Amman has indicated an inability to estimate when this process will conclude, suggesting that the consular officer has failed to render a final decision in his spouse's case. *Id.* He reiterates his argument that defendants have unreasonably delayed the adjudication of his spouse's visa application. *Id.*, pp. 11-14.

## II.     DISCUSSION

When ruling on a motion to dismiss under Rule 12(b)(6), the court construes the record in the light most favorable to the non-moving party and accepts all well-pleaded factual allegations as true. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 274 (6th Cir. 2010). While a complaint will survive a motion to dismiss if it contains "either direct or inferential allegations respecting all material elements" necessary for recovery under a viable legal theory, this court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal

conclusions masquerading as factual allegations will not suffice." *Id.* at 275-76 (citation and quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions...." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Rather, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 247 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A noncitizen seeking a visa based on a familial relationship with a U.S. citizen must complete a process prescribed by the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1104, *et seq*. First, the U.S. citizen must file a visa petition with USCIS on behalf of the noncitizen seeking to have them classified as an immediate relative. See 8 U.S.C. § 1154(a)(1)(A); 8 C.F.R. §§ 204.2(a)(2), (d)(2), (g)(2). If USCIS approves the visa petition, the beneficiary may apply for an immigrant visa. *See* 8 U.S.C. §§ 1201(a), 1202(a). In addition to a requirement to provide a variety of documentation, *see, e.g.*, 8 U.S.C. § 1202(b), the applicant must appear for an in-person interview with a consular officer. *See* 8 U.S.C. § 1202(h). The decision to issue a visa or refuse a visa application rests with the consular officer. *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. §§ 42.71, 42.81. Noncitizens bear the burden of establishing eligibility for a visa to the satisfaction of the consular officer. 8 U.S.C. § 1361. If a consular officer is not satisfied that an applicant demonstrated eligibility for a visa, the consular officer must refuse the visa application. *Id.*; 8 U.S.C. § 1201(g) ("No visa shall be issued to an alien if . . . it appears to the consular officer [from the application papers] that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law," or if "the consular officer knows or has reason to believe that [the] alien is ineligible to receive a visa . . . under section 1182."); *see also* 22 C.F.R. § 40.6.

4

Defendants argue the doctrine of consular non-reviewability bars the Court's review of the complaint. The undersigned agrees.

The Supreme Court very recently reaffirmed the doctrine of consular nonreviewability in *Department of State v. Muñoz*, No. 23-334, 2024 WL 3074425 (U.S. June 21, 2024). The Court stated:

> Congress may delegate to executive officials the discretionary authority to admit noncitizens "immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-591 (1952). When it does so, the action of an executive officer "to admit or to exclude an alien" "is final and conclusive." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see also Dep't. of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 138-139 (2020); *Mandel*, 408 U. S., at 765-766; *Nishimura Ekiu v. United States*, 142 U.S. 651, 659-660 (1892). *The Judicial Branch has no role to play "unless expressly authorized by law." Knauff,* 338 U. S., at 543. *The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions. This principle is known as the doctrine of consular nonreviewability.*

*Muñoz,* 2024 WL 3074425, at *5 (emphasis added).

The Supreme Court in *Munoz* made clear that that "[t]he Judicial Branch has no role to play unless expressly authorized by law." *Id.* (internal quotations omitted). Nor is there any law that provides such express authorization that would allow the Court to review the visa refusal in this case. *See id.* ("The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions.")

In this case, a consular officer has refused Ms. Al-Obaidy's immigrant visa application under 8 U.S.C. § 1201(g) and therefore, Plaintiff's claims are barred from judicial review. *See also Baaghil v. Miller*, 1 F.4th 427, 432 (6th Cir. 2021) (the doctrine of consular non-reviewability applies to visa refusals under INA § 221(g), 8 U.S.C. § 1201(g); finding that a refusal based on 8 U.S.C. § 1201(g) was sufficient to apply the doctrine of consular nonreviewability to bar judicial

5

review; "We have no authority to second guess the visa decisions of the American consulate in Yemen and thus leave those decisions in place"; visa decisions, as a general matter, fall within the domain of the Legislative and Executive Branches—with Congress setting the terms for acceptance and denial and the President and the Department of State exercising considerable discretion in implementing those requirements). *Id.* (citations omitted).

In this context, the particular "terms" are dictated by 8 U.S.C. § 1201(g): "The consular official must refrain from issuing the visa if the official "knows or has reason to believe" that the applicant does not qualify." *Baaghil,* 1 F.4th at 430 (citing INA § 221(g), 8 U.S.C. § 1201(g)). In *Baaghil,* plaintiffs sought to make collateral attacks on the consular officer's refusal under 8 U.S.C. § 1201(g), including through due process claims. The Sixth Circuit rejected their efforts, stating, "[a]s to the substance of the decision—surely his real concern—that is not our call to make. We have no authority to investigate, or for that matter to oversee federal court discovery of, the merits of each consulate decision in this area." *Id.* at 434.

Plaintiff asks this Court to review the consular officer's decision under the APA, which provides that a court can compel action unlawfully withheld or unreasonably delayed and review "final agency action." *See* 5 U.S.C. §§ 555, 706. This argument fails. The Supreme Court in *Munoz* stated: "Congress may delegate to executive officials the discretionary authority to admit noncitizens immune from judicial inquiry or interference" and "[w]hen it does so, the action of an executive officer to admit or to exclude [a noncitizen] is final and conclusive." *Muñoz*, 2024 WL 3074425, at *5 (internal quotations and citations omitted).

Congress mandated in the INA that consular officers refuse a visa when "it appears to the consular officer" that the applicant "is ineligible to receive a visa." 8 U.S.C. § 1201(g) (INA § 221(g)). A refusal pursuant to § 1201(g) reflects that a consular officer determined that the visa

applicant failed to meet their burden to establish eligibility for the visa sought, and while additional discretionary investigation may prompt the consular official to reopen that decision, "the action of [the consular officer] under such authority is final and conclusive." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543. 2 (1950).

Moreover, the Administrative Procedure Act does not provide the express authorization required by *Muñoz*. The Sixth Circuit in *Baaghil* stated, "the APA says that it does not supplant 'other limitations on judicial review.' 5 U.S.C. § 702. The doctrine of consular non-reviewability predates the passage of the APA and amounts to one such limitation on judicial review that supersedes the APA's general authority to challenge a 'legal wrong' caused by the national government." *Baaghil*, 1 F.4th at 434 (citations omitted). As a result, "[t]he APA thus does not offer an 'avenue for review of a consular officer's adjudication of a visa on the merits.'" *Id.* at 434-35 (quoting *Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018)); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162 (D.C. Cir. 1999) ("To put the matter in terms of APA § 701(a)(1), we may infer that the immigration laws preclude judicial review of consular visa decisions."); *Onuchukwu v. Clinton*, 408 F. App'x 558, 560 (3d Cir. 2010) ("Although Congress could provide an avenue through which courts could review consular decisions on visas . . . jurisdiction is not available through the statutes, such as . . . the Administrative Procedures (sic) Act."); 6 U.S.C. § 236(f) ("Nothing in this section shall be construed to create or authorize a private right of action to challenge a decision of a consular officer or other United States official or employee to grant or deny a visa."); S. Rep. No. 81-1515 at 612 ("The authority of the consular officers under the law is plenary. There is no official or judicial review of their action and issuance of a visa is entirely in their discretion.").

Congress has not authorized judicial review of a visa application refused under 8 U.S.C. §

7

1201(g) or any other ground. Congress, when vesting in the Department of Homeland Security some responsibility related to visas in section 428 of the Homeland Security Act, specifically included a provision that it was not "create[ing] or authoriz[ing] a private right of action to challenge a decision of a consular officer or other United States official or employee to grant or deny a visa."). *See* § 428(f) of Pub. L. No. 107-296, codified at 6 U.S.C. § 236(f). The House committee report accompanying the legislation stated, "by explicitly providing that no private rights of action are created" with the passage of the Homeland Security Act, "our amendment will ensure that denials of visa petitions in our overseas posts will continue to be non-reviewable." Homeland Security Act of 2002: Hearing and Markup on H.R. 5005 Before the House Comm. on International Relations, 107th Cong., 2d Sess. 89 (2002).

Here, because the consular officer determined that Ms. Al-Obaidy was ineligible for a visa and refused her visa application as mandated by Congress, this Court will decline to apply the APA to the consular officer's decision making in this case.

Moreover, even considering Plaintiff's APA claim further, Plaintiff has not alleged a plausible claim that defendants unlawfully withheld or unreasonably delayed the adjudication of his spouse's visa application. Plaintiff cannot demonstrate that a consular officer failed to take a mandatory, non-discretionary duty to adjudicate Plaintiff's spouse's visa application because a consular officer in fact refused the visa application. An APA claim "under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Here, Plaintiff claims that defendants have failed to adjudicate Ms. Al-Obaidy's visa application. Docket No. 1, pp. 7-8. Although Plaintiff has failed to plead a mandatory, non-discretionary duty under the INA, on this record, it is clear that the consular officer has fulfilled all that is required.

22 C.F.R. § 42.81(a) states:

> Grounds for refusal. When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must *issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa*.

*Id.* (emphasis added). The record demonstrates a consular officer has already fulfilled any such duty by refusing Ms. Al-Obaidy's visa application under 8 U.S.C. § 1201(g). Docket No. 1-2, p. 10. Accordingly, Plaintiff has failed to identify a mandatory, non-discretionary duty that the consular officer has failed to take.

Nor has Plaintiff plausibly alleged that the consular officer has unreasonably delayed the adjudication of his spouse's visa application. To determine whether a plaintiff has sufficiently alleged that agency action has been unreasonably delayed, courts apply the six "TRAC" factors set forth in *Telecommunications. Rsch. & Action Ctr*. v. F.C.C., which provide: (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed. 750 F.2d 70, 80 (D.C. Cir. 1984) (citations and quotations omitted)).

To the extent they are applicable here, the TRAC factors weigh in defendants' favor. The first two factors, whether the length of time for the agency to act is governed by a rule of reason

as informed by any specific timetable established by Congress, weigh in defendants' favor. Here, Congress has provided no specific timetable by which the Department is required to readjudicate the instant immigrant application. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F.Supp.3d 147, 153-54 (D.D.C. 2017) (two-year delay in processing an immigration visa "does not typically require judicial intervention.")

Because Congress has not established a firm timetable, the question is whether Ms. Al-Obaidy's visa application has been pending for an unreasonable amount of time as established by case law. *See Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 308201, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine whether a delay is reasonable.).

Here, case law does not support Plaintiff's assertion of unreasonable delay in approximately 17 months to date. *See e.g.*, *Aljabari v. Mayorkas*, No. 21-CV-6645, 2022 WL 2073047, at *4 (N.D. Ill. June 9, 2022) ("while courts have not drawn a bright-line rule, they often consider delays between three and five years to be reasonable") (citations omitted); *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022) (Circuit's law suggests that "[c]ourts measure the period of delay from the last government action to the issuance of the opinion"; 32-month delay did not violate the APA); *Skalka*, 246 F. Supp. 3d, at 153-54 (citing case law that even a five- to ten-year delay in the immigration context may be reasonable); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (finding three-year delay in adjudicating an asylum application was not unreasonable under the APA); *Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("[d]istrict courts have generally found that immigration delays in excess of five, six, seven years

are unreasonable, while those between three to five years are often not unreasonable.").

The third and fifth factors relating to loss of consortium arguably weigh in Plaintiff's favor. However, the fourth factor, the effect of granting relief on the agency's competing priorities, weighs heavily in defendants' favor. While defendants agree there has been an impact to Plaintiff, the Court must consider the impact to other noncitizens. *Dehghanighanatghestani v. Mesquita*, No. CV 22-2595 (CKK), 2022 WL 4379061, at *7 (D.D.C. Sept. 22, 2022) ("many others face similarly difficult circumstances as they await adjudication of their visa applications."). Moreover, courts generally will not compel agency action where the result would be merely to expedite the consideration of a plaintiff's application ahead of others. *See Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (courts will not compel agency action where the result "would mean putting [plaintiff] at the head of the queue at the expense of others"); *see also Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1101 (D.C. Cir. 2003) (Secretary of Interior appealed order finding the Bureau of Indian Affairs (BIA) unreasonably delayed acting upon tribe's petition in violation of the APA; holding district court erred by disregarding the importance of there being 'competing priorities' for limited resources); *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991) (courts generally "have no basis for reordering agency [FDA] priorities," given that the agency is "in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."); *Sarlak,* 2020 WL 3082018, at *6 (finding that fourth TRAC factor weighed in government's favor because expediting the plaintiff's waiver would harm other agency activities of equal or greater priority); *Ghadami v. United States Dep't. of Homeland Sec.*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (finding that "expediting review in [plainifff's] case would merely direct government resources from the adjudication of other waiver applications"); *Fangfang Xu,*

11

434 F. Supp. 3d at 55 ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication.").

The same rationale applies here. Granting Plaintiff the requested relief would only serve to improperly advance Ms. Al-Obaidy's application ahead of others who are in the same situation. Moreover, granting relief would simply have the effect of reordering the Department's and U.S. Embassy's method of balancing those priorities and would move Ms. Al-Obaidy arbitrarily ahead in line of others. This sets "a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer. Such a situation hardly optimizes resources and serves only the individual at the detriment of the group." *Dmitrenko v. Chertoff*, No. 1:07 CV 82 JCC, 2007 WL 1303009, at *1 (E.D. Va. Apr. 30, 2007). *See also Aljabari, v. Mayorkas*, 2022 WL 2073047, at *6 ("The line is zero sum – any time spent on Aljabari's application can't be spent on other applications."); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019) (granting relief to plaintiff simply moves her to the front of the line at the expense of all other applicants); *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) ("There are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage."). The undersigned concludes the fourth factor weighs heavily in favor of Defendants.

The sixth factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" TRAC, 750 F.2d at 80. In his complaint, Plaintiff alleges that the combined delay and failure to act on his spouse's immigrant visa application is attributable to defendants' failure to adhere to their legal duty to

12

Case 3:24-cv-00419   Document 11   Filed 10/02/24   Page 12 of 13 PageID #: 142

avoid unreasonable delays under the INA and the applicable rules and regulations. Docket No. 1. Plaintiff cites no law placing such a duty on defendants, nor is the Court aware of any. Although a dearth of information may be frustrating to Plaintiff, it is not proof of impropriety or bad faith. Therefore, this factor is neutral. In sum, the government's interests in balancing its own priorities and carefully vetting foreign nationals before admitting them to the country outweigh Plaintiff's interest in receiving an immediate re-adjudication of his spouse's visa application.

For these reasons, the undersigned recommends defendants' motion to dismiss be **GRANTED.**

### III. CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motion to dismiss the complaint for failure to state a claim (Docket No. 7) be **GRANTED** and the claims against Defendant be **DISMISSED WITH PREJUDICE.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**